UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-61254-SINGHAL/VALLE

DAVID BISHOP, *individually,*
*as trustee of the Bishop Family*
*Living Trust, and as custodian*
*of his retirement account, et al.*,

   Plaintiffs,

v.

ROSS BALDWIN, *et al.*,

   Defendants.
_____

## OMNIBUS ORDER ON DISCOVERY MOTIONS

   THIS MATTER is before the Court upon the following Motions: (i) Defendants Ross Baldwin and NCB, Inc.'s Motion to Quash and for Protective Order (ECF No. 30); (ii) Plaintiffs' Motion to Compel Compliance with Subpoena Against Non-Party AGAP RoboVault, LLC (ECF No. 49); and (iii) Plaintiffs' Motion to Compel Production of Documents (ECF No. 50) (together, the "Motions"). United States District Judge Raag Singhal referred discovery matters to the undersigned for disposition. *See* (ECF No. 18 at 6).

   The Court has reviewed the Motions, the Responses (ECF Nos. 48 and 51), and being otherwise fully advised in the matter, for the reasons discussed below, it is hereby **ORDERED AND ADJUDGED** that: (i) Defendants' Motion to Quash and for Protective Order (ECF No. 30) is **DENIED**; (ii) Plaintiffs' Motion to Compel Compliance with Subpoena Against Non-Party AGAP RoboVault, LLC (ECF No. 49) is **GRANTED BY DEFAULT**; and (iii) Plaintiffs' Motion to Compel Production of Documents (ECF No. 50) is **GRANTED IN PART AND DENIED IN PART**.

## I.     BACKGROUND

According to the Second Amended Complaint (the "SAC"), Defendants Ross Baldwin ("Baldwin"), Carrie Johnson, Jeff Johnson (together, the "Johnsons"), and others ran a Ponzi scheme through various corporate entities, including Defendants National Coin Broker, Inc. ("NCB"), NCB Wholesale, Co. ("NCB Wholesale"), and Precious Commodities, Inc. ("PCI"). (ECF No. 19, the SAC ¶ 34).[1] More specifically, the SAC alleges that Baldwin would convince elderly victims to purchase silver through NCB, which silver would then be leased to Defendant PCI. (SAC ¶¶ 23-24). Defendants represented that the silver would be stored in a secure and insured vault. *Id.* ¶ 34. Defendants, however, sold the silver and used the proceeds to pay nominal interest to the victims, fund their own lifestyles, and keep the scheme afloat until the money ran out. *Id.* Through this scheme, Defendants allegedly conspired to defraud all NCB/PCI clients, including Plaintiffs, and converted approximately $7 million in silver owned by the victims and leased to PCI. *Id.* ¶ 38. The SAC alleges five causes of action: conversion (Count I); conspiracy to convert assets (Count II); breach of fiduciary duty against Defendant Baldwin (Count III); breach of contract against PCI (Count IV); and unjust enrichment against all Defendants (Count V). *See generally* SAC.

Defendants' Motion to Quash and for Protective Order (ECF No. 30) (the "Motion for Protective Order") was filed in response to Plaintiffs' notice of their intent to issue subpoenas to various third-party entities, including banks (Citibank, N.A., and Wells Fargo, N.A.), insurance brokers (Hugh Wood, Inc., and Willis Towers Watson), and certain businesses (the law firm of

---

[1] All Defendants, except Defendants Baldwin and NCB, have defaulted. *See* (ECF Nos. 40-43, 46, 50 at 2). Therefore, these Motions pertain only to Defendants Baldwin and NCB.

Russell L. Forkey, P.A., and retirement administrator Next Generation Services). (ECF No. 30 at 1-2). As discussed below, Defendants oppose the subpoenas. *See generally* (ECF No. 48).

Lastly, Plaintiffs have served discovery requests on Defendants Baldwin and NCB, which Defendants oppose. That is the subject of Plaintiffs' Motion to Compel Production of Documents (ECF No. 50) ("Plaintiffs' Motion to Compel"), also addressed herein.[2]

## II. DISCUSSION

### A. Defendants' Motion to Quash and for Protective Order

#### 1. *Law on Subpoenas and Protective Orders*

Pursuant to Federal Rule of Civil Procedure 26(b), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.* The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters that may aid a party in the preparation or presentation of his case. Fed. R. Civ. P. 26(b) Advisory Committee's note (1946).

Rule 26, however, also protects those from whom discovery is sought against "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party making a motion for a protective order, however, must show that "good cause" exists for the court to issue such an order. *Id.* In addition to finding good cause, the court must also be satisfied that, on balance, the interests of the party seeking the protective order outweigh the interests of the opposing party. *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989).

---

[2] Plaintiffs have also filed a Motion to Compel Compliance with Subpoena Against Non-Party AGAP RoboVault. (ECF No. 49). Non-party RoboVault failed to timely respond to this motion. Thus, on December 4, 2020, the Court issued an order to show cause why the motion should not be granted by default. (ECF No. 52). To date, however, non-party RoboVault has failed to respond to this Court's Order to Show Cause and the underlying Motion. Accordingly, this motion is granted by default.

Additionally, a motion to quash a subpoena is governed by Federal Rule of Civil Procedure 45, which provides that a subpoena must be modified or quashed if, among other things, it "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." *See* Fed. R. Civ. P. 45(c)(3)(A).

### 2. *The Subpoenas to Citibank and Wells Fargo*

The subpoenas to Citibank and Wells Fargo are identical and request "all bank records, including but not limited to statements, copies of all checks, wire instructions, wire confirmations, documents reflecting the signatory on the account, documents reflecting the owner and/or beneficial interest in the account, and any and all other records . . . from January 1, 2015 through [the] present" for nine different "accounts, persons, or entities."[3] (ECF No. 30 at 14, 17, 18, 21). Although the subpoenas list nine accounts, only the accounts of Baldwin and NCB are at issue in the Motion.

Defendants Baldwin and NCB argue that the subpoenas directed to the banks invade their Florida constitutional right to privacy in their financial records and are impermissibly overbroad. (ECF No. 30 at 3-4). Although Plaintiffs acknowledge that Defendants have standing to challenge the bank subpoenas, *see* (ECF No. 48 at 7), they maintain that the subpoenas are proper.

Florida's constitution recognizes an individual's right to financial privacy, but that right is not absolute and does not protect against the disclosure of financial records when these are relevant to disputed issues in the underlying litigation. *See Frenkel v. Acunto*, No. 11-CV-62422, 2014 WL 4680738, *5 (S.D. Fla. Sept. 19, 2014); *see also Ochoa v. Empresas ICA, S.A.B. de C.V.*, No. 11-

---

[3] Specifically, the subpoenas seek records from Citibank, N.A. or Wells Fargo for the following corporate and individual accounts: Precious Commodities, Inc.; National Coin Brokers, Inc.; NCB Wholesale, Inc; Ross Baldwin; Andre Cardoso; Robert Jeffrey Johnson; Carrie Johnson; and Kathleen Hook, and one account referenced as the "Citibank N.A. Account" or "Wells Fargo Account" with a corresponding number. (ECF No. 30 at 17, 21).

4

23898-CIV, 2012 WL 3260324, at *6 (S.D. Fla. Aug. 8, 2012) (noting that courts will compel production of personal financial documents and information if shown to be relevant); *Aspex Eyewear, Inc. v. Ross*, 778 So. 2d 481, 481-82 (Fla. 4th DCA 2001) ("Ordinarily the financial records of a party are not discoverable unless the documents themselves or the status which they evidence is somehow at issue in the case.").

Here, the subpoenas seek financial information relevant to the claims in the SAC. For example, the SAC alleges that:

> 52. Baldwin and/or the Johnsons used a small portion of the sale proceeds from Mrs. Batten's silver to deposit amounts into NCB Wholesale's account, which would then deposit funds into PCI's account, in order to make small "interest" payments intermittently on the lease to Mrs. Batten and/her IRA custodian through March, 2019.
>
> 53. In March 2019, all lease payments stopped.
>
> 54. On information and belief, NCB, NCB Wholesale, Baldwin, and/or the Johnsons, converted Mrs. Batten's silver for their own benefit, kept her complacent with small interest payment for years using a small portion of the sale proceeds from her silver, and then, when the scheme ran out of money, discontinued payments that could not be made.
>
> 56. On information and belief, cash proceeds from the sale of Bishops' silver was used to fund the lifestyles of Baldwin and the Johnsons, and to benefit Hook and Cardoso as well.

***

> 71. Baldwin and/or the Johnsons used a small portion of the sale proceeds from the silver to deposit into the bank account for NCB Wholesale, which then deposited small amounts into the account for PCI, to make small "interest" payments intermittently on the leases, as amended, through March, 2019.
>
> 72. The lease payments ceased in April, 2019.
>
> 75. On information and belief, cash proceeds from the sale of Bishops' silver was used to fund the lifestyles of Baldwin and the Johnsons, and to benefit Hook and Cardoso as well.

***

> 83. Baldwin and/or the Johnsons then converted the silver by removing it from the RoboVault, selling it on the market at various times, using those proceeds to fund PCI on a de minimus basis through NCB Wholesale, and otherwise retained the proceeds from that sale for themselves and others, as set forth above.
>
> 90b. The Johnsons established and managed NCB Wholesale using Hook as a nominal officer, which was used at times to sell Plaintiffs' silver, to collect money from the sale of Plaintiffs' silver, and to deposit some in PCI's account to fund de minimus lease payments to Plaintiffs.
>
> 90d. The Johnsons and/or Baldwin converted the silver and used small amounts of the proceeds to pay interest and keep the scheme afloat.
>
> ***
>
> 104. Plaintiffs conferred a benefit on all defendants by transferring their silver to PCI that was converted and sold by certain Defendants, as set forth above, which was used to benefit all Defendants by retaining portions of the proceeds from those sales.

(SAC ¶¶ 52-54, 56, 71-72, 75, 83, 90b, 90d, 104). Thus, the subpoenaed financial records are clearly relevant to the alleged claims.

The undersigned is also unpersuaded by Defendant Baldwin and NCB's argument that there is "no right to discover Mr. Baldwin's personal finances." (ECF No. 30 at 5). Indeed, the SAC alleges that, among other things, Defendant Baldwin "conspired to defraud all NCB/PCI clients, resulting in the conversion and loss of approximately $ 7 million worth of precious metals" (SAC ¶ 38) and that "Plaintiffs conferred a benefit on all defendants by transferring their silver to PCI," which silver was sold by certain Defendants who then used the proceeds for their personal benefit and to keep the scheme afloat. *Id.* ¶¶ 56, 75, 83, 90b, 90d, 104. Further, Defendants allegedly voluntarily accepted and retained the benefits conferred. *Id.* ¶ 105.

These allegations are sufficient to support discovery of Defendant Baldwin's personal financial information. For the same reasons, the undersigned is unpersuaded by Defendants' argument that Plaintiffs must obtain a judgment before seeking to obtain financial discovery. As

noted above, the Federal Rules allow for broad discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Thus, discovery into Defendant Baldwin and NCB's financial information is relevant and appropriate.

Moreover, the time period for the subpoenas (from January 1, 2015 to the present) is consistent with the allegations in the SAC and not overbroad. *See, e.g.*, (SAC ¶ 39) (alleging that in or around March 2015, Defendant Baldwin represented to Eileen Batten that a silver leasing program functioned as a secured metals depository out of the RoboVault in Fort Lauderdale, Florida); (SAC ¶ 76) (alleging that the Bishops had no reason to suspect the conversion or Ponzi scheme until the payments stopped in April 2019 and a subsequent investigation was performed by law enforcement). The financial records would also show the flow of payments between Defendants after they allegedly sold Plaintiffs' silver and retained the sales proceeds. (SAC ¶ 104).

Against these legal principles and in the context of the SAC, the undersigned finds that the subpoenas to Citibank and Wells Fargo are proper. Accordingly, the Motion for Protective Order regarding these banks is denied. By the date set forth below, Citibank and Wells Fargo must produce documents responsive to the subpoenas at issue in the Motion for Protective Order.[4]

    *3. The Subpoenas to Willis Towers Watson and Hugh Wood, Inc.*

In relevant part, the subpoenas to Willis Towers Watson (an advisory firm) and Hugh Wood, Inc. (an insurance broker) seek "all correspondence, documents, and records" related to Defendants Baldwin and NCB from January 1, 2015 to the present. *See* (ECF No. 30 at 6, 22-25,

---

[4] According to Plaintiffs, Wells Fargo has gathered all of the documents and is ready to produce them. (ECF No. 48 at 9). Therefore, there should be no delay in producing responsive documents.

7

26-29).[5] Defendants Baldwin and NCB argue that these subpoenas are overbroad and irrelevant to the claims. (ECE No. 30 at 6). Plaintiffs, however, assert that the subpoenas do not seek personal financial information, but records related to insurance policies brokered by the specific firms. (ECF No. 48 at 6). Thus, Plaintiffs argue that Defendants Baldwin and NCB lack standing because they have no personal right or privilege with respect to the subpoenaed documents. *Id.*

Generally, a party does not have standing to object to a subpoena issued to a third party. *See Brown v. Braddick,* 595 F.2d 961, 967 (5th Cir. 1979);[6] *Rice v. Reliastar Life Ins. Co.*, No. 2:11-CV-548-FTM-29-SPC, 2011 WL 4596118, at *2 (M.D. Fla. Oct. 3, 2011). In the Eleventh Circuit, however, standing exists if the party alleges a "personal right or privilege" with respect to the subpoenaed information. *See, e.g., Rice,* 2011 WL 4596118, at *2; *Burch v. P.J. Cheese, Inc.*, No. 2:09-CV-1640-SLB, 2010 U.S. Dist. LEXIS 143543, at *2 (N.D. Ala. Aug. 20, 2010) (finding that plaintiff had a legitimate privacy interest in employment records); *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005).

Defendants Baldwin and NCB do not argue that they have a personal right or privilege to the information subpoenaed from these firms. Therefore, in the absence of a personal right or privilege, the undersigned finds that Defendants Baldwin and NCB lack standing to challenge these subpoenas. Accordingly, the Motion for protective order regarding the subpoenas to these two firms is denied for lack of standing.[7] Thus, by the date set forth below, Willis Towers Watson

---

[5] These subpoenas list three insurance policies and 15 entities and individuals. *See* (ECF No. 30 at 25, 29). For purposes of the instant Motion, however, only Defendants Baldwin and NCB object to the subpoenas.

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), this Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to the close of business on September 30, 1981.

[7] Furthermore, even if the Court were to consider Defendants Baldwin and NCB's challenge to these subpoenas on the merits, any concern regarding the confidentiality of the subpoenaed

and Hugh Wood must produce documents responsive to the subpoenas at issue in the Motion for Protective Order.[8]

### 4. *The Subpoena to Russell L. Forkey, P.A.*

The subpoena to Russell L. Forkey, P.A., a Florida law firm, seeks "[a]ll discovery received from defendants and third parties, and all deposition transcripts" in two separate actions pending in the 17th Judicial Circuit in and for Broward County.[9] (ECF Nos. 30 at 6, 34-37). Defendants Baldwin and NCB argue that the subpoenas are improper and irrelevant to the claims and defenses in the instant lawsuit. (ECF No. 30 at 6). Plaintiffs challenge Defendants' standing to oppose this subpoena and assert that the subpoenas are reasonable. (ECF No. 48 at 4).

The undersigned finds that Defendants Baldwin and NCB have failed to demonstrate that they have standing to challenge the subpoena to this third-party law firm. Therefore, the motion for Protective Order regarding the subpoena to the Forkey firm is denied for lack of standing.

Moreover, even if considered on the merits, Defendants' arguments are unavailing. Defendants argue that "claims and defenses raised in other lawsuits are not relevant to the claims and defenses taken in the instant litigation." (ECF No. 30 at 6). This argument refers to the concept of "cloned discovery," which is the practice where a party requests all documents produced or received during other litigation or investigation. *See, e.g., Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP99-0690-C-Y/G, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000);

---

material can be resolved by a confidentiality order, to which Plaintiffs are amenable. (ECF No. 48 at 9-10).

[8] Plaintiffs indicate that they have already "worked out an agreement" with Hugh Wood "about the scope of the subpoena." (ECF No. 48 at 6). Thus, there should be no delay in producing responsive documents.

[9] The two cases are: *Richard Jones v. Ross Baldwin et al*., Case No. CACE20004523, in the Circuit Court of the 17th Judicial Circuit in and for Broward County, FL and *Robert Landas v. Precious Commodities, Inc*., Case No. CACE19004144, in the Circuit Court of the 17th Judicial Circuit in and for Broward County, FL. (ECF No. 30 at 37).

9

*Wollam v. Wright Med. Grp., Inc.*, No. 10-CV-03104-DME-BNB, 2011 WL 1899774, at *1-2 (D. Colo. May 18, 2011). Most Courts find "cloned discovery" irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the case. *See, e.g., Midwest Gas Servs.*, 2000 WL 760700, at *1; *Wollam*, 2011 WL 1899774, at *1.

With those principles in mind, the undersigned has reviewed the operative complaints in both referenced state court actions. A comparison of the allegations in the state actions with those in the instant case confirms that the cases all involve the same alleged Ponzi scheme and is therefore highly relevant as the SAC alleges Defendants defrauded not just Plaintiffs, but all other PCI clients. *See, e.g.*, (SAC ¶ 34). Accordingly, the Motion for Protective Order regarding the subpoena to the Forkey firm is denied for both lack of standing and on the merits. By the date set forth below, Russell L. Forkey, P.A. must produce documents responsive to the subpoenas at issue in the Motion for Protective Order.[10]

### 5. *The Subpoena to Next Generation Services*

The subpoena to Next Generation Services ("Next Generation") seeks "[a]ll correspondence, including but not limited to electronic communications, with or about" several entities and individuals, including Defendant Baldwin and NCB. (ECF No. 30 at 30-33). Defendants' argument regarding the Next Generation subpoena is merely one-sentence, simply incorporating their overbreadth argument regarding the subpoenas to the advisory firm Willis Towers and insurance broker Hugh Wood. *See* (ECF No. 30 at 4 n.3, 6). Simply put, Defendants fail to meaningfully address the Next Generation subpoena.

---

[10] Once again, Plaintiffs indicate that they have communicated with the Forkey firm and "are (should be) capable or working out any issues" regarding the subpoena. (ECF No. 48 at 6). Thus, there should be no delay in producing responsive documents.

Accordingly, for the reasons discussed above regarding the firm Willis Towers and insurance broker Hugh Wood, the Motion for Protective Order regarding the subpoena to Next Generation is denied for lack of standing. Moreover, Defendants Baldwin and NCB have failed to demonstrate that the subpoena seeks production of personal or confidential information. Thus, by the date set forth below, Next Generation must produce documents responsive to the subpoenas at issue in the Motion for Protective Order.

**B. Plaintiffs' Motion to Compel**

*1. Discovery Standard Generally*

Under the Federal Rules, a party may pose interrogatories related to any matter into which Rule 26(b) allows inquiry (Fed. R. Civ. P. 33(a)(2)), request the production of any documents that fall within the scope of Rule 26(b) (Fed. R. Civ. P. 34(a)), and serve requests to admit certain matters within the scope of Rule 26(b)(1) (Fed. R. Civ. P. 36(a)(1)). Rule 26(b) also allows discovery "through increased reliance on the commonsense concept of proportionality." *In re: Takata Airbag Prod. Liab. Litig.*, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) (quoting Chief Justice John Roberts, 2015 Year–End Report on the Federal Judiciary 6 (2015)); *see also* Fed. R. Civ. P. 26(b) Advisory Committee's note (1946) (noting that the purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters that may aid a party in the preparation or presentation of his case). If the opposing party objects to interrogatories or requests, the requesting party may then file a motion to compel production pursuant to Federal Rule of Civil Procedure 37, but only after its counsel, in good faith, confers with opposing counsel to resolve discovery disputes without court intervention. *See* Fed. R. Civ. P. 37(a)(1).

The Federal Rules also afford the Court broad authority to control the scope of discovery. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306-07 (11th Cir. 2011), but "strongly favor full discovery whenever possible. *See Farnsworth v. Procter & Gamble Co.*, 758

F.2d 1545, 1547 (11th Cir. 1985). Thus, courts employ a liberal and broad scope of discovery in keeping with the spirit and purpose of these rules. *See Rosenbaum v. Becker & Poliakoff, P.A.*, 708 F. Supp. 2d 1304, 1306 (S.D. Fla. 2010) (collecting cases regarding the scope of discovery). The "overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information, so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Shapiro v. Dynamic Recovery Sols., LLC*, No. 18-CV-60035-BB, 2018 WL 8130559, at *4 (S.D. Fla. July 26, 2018) (citation omitted).

Accordingly, when a party objects to discovery, the onus is on the objecting party to demonstrate with specificity how the objected-to request is unreasonable or otherwise unduly burdensome. *Powers v. Target Corp.*, No. 19-CV-60922-BLOOM/VALLE, 2020 WL 409534, at *2 (S.D. Fla. Jan. 24, 2020) (citation omitted).

Against these general principles, the Requests in Plaintiffs' Motion to Compel (ECF No. 50) are addressed below as grouped in the briefs.

> 2. *Request Nos. 1-4, 7, seeking "All communications with, or relating to" various entities/individuals*

Request Nos. 1-4 and 7 seek the following:

1. All communications with, or relating to, Precious Commodities, Inc. and/or any agent thereof.

2. All communications with, or relating to, NCB Wholesale, Inc. and/or any agent thereof.

3. All communications with, or relating to, any individual defendant named in this lawsuit.

4. All communications with, or relating to, Silvius Salomon, Riccardo Olivieri, Christopher Miller, Rebecca Deforest, Mary Springer, Richard Schrutt, Amanda Godden, and/or Kristina Zieminski.

      7. All communications relating to the Silver Leasing Program.

(ECF No. 50-1 at 2-4).

      Defendants object to these requests as overbroad and not relevant to the claims in this case in that they seek "all communications, with or relating to" an entity or individual. *See generally* (ECF No. 51). Defendants further object that the lawsuit "relates to only a limited transaction with Plaintiffs." (ECF Nos. 50 at 4, 50-1 at 3).

      Although the requests as written are overbroad in seeking "all communications, with or relating to" an entity or individual, Defendants' argument that discoverable information should be strictly limited to transactions between Defendants and Plaintiffs is too narrow. Rather, pursuant to Rule 26(b), parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b). As noted above, the SAC alleges that Defendants Baldwin and the Johnsons operated a Ponzi scheme using, among other things, NCB, NCB Wholesale, and PCI to effectuate the Ponzi scheme. *See, e.g.*, (SAC at ¶ 34). Defendant Baldwin allegedly would convince victims to purchase silver through NCB, which silver would be leased to PCI for storage in a secure and insured vault. (SAC ¶ 34). Instead, Defendants sold the silver and used the proceeds to pay nominal interest to the victims, and perpetuate the scheme until the money ran out. *Id*. According to the SAC, Defendants Baldwin and the Johnsons conspired to defraud all NCB/PCI clients, including Plaintiffs, resulting in the conversion and loss of approximately $7 million worth of precious metals owned by the victims and leased to PCI. *Id.* ¶ 37.

      Based on these allegations, the Court will narrow the scope of Request Nos. 1-4 and 7 and require Defendants to respond and produce "all communications, with or relating to" the specified entities and individuals *limited to the claims and defenses at issue in this case,* including, for

example, allegations that: (i) Defendants would allegedly convince victims to purchase precious metals through NCB and then lease the precious metals to PCI; (ii) Defendants Baldwin and the Johnsons conspired to defraud all NCB/PCI clients, including Plaintiffs; (iii) resulting in the conversion and loss of approximately $7 million in precious metals owned by victims and leased to PCI. Further, the timeframe for the Requests is limited to January 2015 to the present, consistent with the allegations in the SAC. Thus, by the date set forth below, Defendants must produce documents responsive to these Requests as amended by the Court.

    *3. Request Nos. 8-11, 15, 18, 20, and 26, related to the Silver Leasing Program*

In connection with the Silver Leasing Program, Plaintiffs' Requests are as follows:

8. All documents related to, and/or that explained how, the Silver Leasing Program worked.

9. All documents related to any due diligence performed in connection with the Silver Leasing Program.

10. All documents reflecting any compensation received by you in connection with the Silver Leasing Program.

11. All documents related to any insurance applied for, or obtained, in connection with the Silver Leasing Program, including but not limited to any applications, correspondence with insurance brokers, and correspondence with your clients.

15. All communications about the Silver Leasing Program with any person representing or affiliated with the named defendants in this lawsuit.

18. All documents related to Federal Express shipments sent in connection with the Silver Leasing Program, including but not limited to any shipping labels, confirmations, receipts, and/or Federal Express account payments and statements.

20. All correspondence relating to the cessation in lease payments under the Silver Leasing Program and/or the return of the silver leased under that program.

26. All documents related to your confirmation of any deposit of precious metals at the RoboVault referenced in the preceding request.

(ECF Nos. 50-1 at 5-9, 51 at 6-7).

In light of the allegations in the SAC, the undersigned finds that the following requests are appropriate: Request Nos. 8, 10, 11, 15, 18, 20, and 26.  Thus, Plaintiffs Motion to Compel is granted as to these Requests.[11]   However, Request No. 9 is overbroad and not relevant to the claims and defenses at issue.  Thus, the motion to compel is denied as to Request No. 9.

   *4. Request Nos. 14 and 24 – Defendants' Personal Financial Information*

Request Nos. 14 and 24 seek Defendants' financial information as follows:

14. Documents sufficient to show all banking institutions with accounts owned by, used by, managed by, or accessible to, you.

24. Documents reflecting all payments from or to any of the other named defendants in this lawsuit.

In response, Defendants raise the same objections as previously raised in Defendants' Motion to Quash and for Protective Order regarding subpoenas to non-parties for banking and financial records.  *See* (ECF No. 51 at 8 n.2).  As discussed above, however, the undersigned finds the banking and financial information is relevant and discoverable.  *See supra* III.A.2.  Accordingly, Plaintiffs' motion to compel responsive documents to Request Nos. 14 and 24 is granted.

### III.   CONCLUSION

For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** as follows:

(i) Defendants' Motion to Quash and for Protective Order (ECF No. 30) is **DENIED**. Unless otherwise agreed-to by the parties and non-parties, the non-parties must produce documents responsive to the subpoenas at issue in this Motion by **December 28, 2020**;

(ii) Plaintiffs' Motion to Compel Compliance with Subpoena Against Non-Party AGAP RoboVault, LLC (ECF No. 49) is **GRANTED BY DEFAULT**; and

---

[11] As noted above, the time period for all of the Requests is January 2015 to the present.

(iii)   Plaintiffs' Motion to Compel Production of Documents (ECF No. 50) is **GRANTED IN PART AND DENIED IN PART** as set forth above.  Unless otherwise agreed-to by the parties, Defendants must produce documents responsive to the Requests at issue in this Motion by **December 28, 2020.**

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida on December 10, 2020.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Raag Singhal
    All Counsel of record